IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2015

## JAROD MARGES PHILLIPS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3454    Seth W. Norman, Judge**

_____

### No. M2014-01374-CCA-R3-PC - Filed April 15, 2015

_____

Jarod Marges Phillips ("the Petitioner") filed a petition for post-conviction relief claiming that his guilty plea was involuntary and unknowing and that he received ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Jordan Sluder, Madison, Tennessee, for the appellant, Jarod Marges Phillips.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

*Guilty Plea Proceedings*

The Davidson County Grand Jury indicted the Petitioner for the following charges: Count 1: First Degree Premeditated Murder; Count 2: Especially Aggravated Robbery; and Count 3: First Degree Felony Murder. On January 25, 2012, the Petitioner entered a best interest guilty plea to Second Degree Murder as to Count 1. Counts 2 and 3 were dismissed. Pursuant to the plea agreement, the Petitioner was sentenced outside his range to 32 years in the Department of Correction as a Range II offender.

During the plea colloquy, the trial court informed the Petitioner of his rights to a trial by jury, to have representation during a trial, to require the State to prove his guilt beyond a reasonable doubt, to confront his accuser, to cross-examine witnesses, to maintain his innocence, to call his own witnesses, and to remain silent. The Petitioner affirmed that he understood these rights. He also stated that he was not suffering any mental illness and that he was not under the influence of any drug or narcotic. He confirmed that he was satisfied with the representation of trial counsel. The Petitioner affirmed that he understood the charges against him and their respective ranges of punishment. He confirmed that he had reviewed the Petition to Enter a Plea of Guilty with his attorney and that he understood it. He further stated that he signed the plea petition freely and voluntarily.

The State made the following offer of proof:

The victim in this case, Mr. Nathaniel Adefope, was a professor at the Tennessee State University Agriculture Resource Center. While employed there and while working at the facility here in Davidson County, [the Petitioner] went to that location as he was known . . . to the victim . . . as a person who also was employed at the TSU campus. They knew each other and an attempt to commit robbery took place upon the victim in the case, Mr. Adefope, and as a result of that the victim was killed. A struggle ensued apparently because there w[ere] also injuries done to [the Petitioner] in this case. DNA was found at the location which matched the victim and [the Petitioner].

Judge, on his plea of guilty to–I think he is going to plead this as a best interest plea of guilty of second degree murder. [The Petitioner] would also waive his range of punishment on that for a total sentence of 32 years at 100 percent.

The Petitioner affirmed the statement of facts as "basically true and correct." He confirmed that he understood the plea bargain, and he entered a guilty plea to Second Degree Murder. The court found there was a factual basis for the plea and that the plea was voluntarily entered. Consequently, it sentenced the Petitioner as a Range II offender to 32 years in the Department of Correction.

*Post-Conviction Proceedings*

In his petition for post-conviction relief, the Petitioner argued that his guilty plea was involuntary and unknowing. He also claimed he was denied effective assistance of counsel because: (1) trial counsel did not explain that the Petitioner would be pleading out-of-range to Second Degree Murder; (2) trial counsel failed to inform him that the State did not intend to call three witnesses whom the Petitioner believed would testify against him at trial; and (3) trial counsel, along with the Petitioner's mother, pressured him into accepting the plea agreement.

At the post-conviction hearing, the Petitioner stated that he was from East Nashville and he graduated from Pearl Cohn High School in 2005. During high school he was enrolled in special education programs. In regard to his guilty plea, the Petitioner explained that he believed he was entering his plea as a Range I offender. However, he admitted that, at the time he entered his guilty plea, he did not know the difference between Range I and Range II classification. He explained that he met with trial counsel and discussed his case "in general," but he claimed they did not discuss the difference between Range I and Range II classification or that the Petitioner would be entering an out-of-range plea.

Trial counsel discussed with the Petitioner the State's evidence against him. The Petitioner understood that the State intended to call three jailhouse informants to testify against him at trial and that each would state that the Petitioner admitted to committing the offenses for which he was charged. The Petitioner explained that his belief that these informants would testify "play[ed] a role" in his decision to plead guilty.

The Petitioner explained that, on the day of his guilty plea, he initially wanted to go to trial and he told trial counsel that he "wasn't going to cop-out to nothing." However, trial counsel told him that he could be sentenced to life in prison if he lost at trial. He asked to speak with his family, and trial counsel brought the Petitioner's wife and mother to visit with him. His wife and mother were crying during the meeting and told the Petitioner to accept the plea offer. The Petitioner stated that these conversations also "play[ed] a role" in his decision to plead guilty and that he felt like he was being pressured to accept the plea agreement.

On cross-examination, the Petitioner admitted that, during the plea negotiations, trial counsel told him that the State was offering a 32-year sentence. The Petitioner refused that offer, but trial counsel explained that 32 years was "as low as it was going to get." The Petitioner also admitted that, during the plea colloquy, the State announced that he was pleading out-of-range. However, the Petitioner maintained that trial counsel "failed to explain" the plea agreement to him and that, even though the State said he was pleading out-of-range, he did not know he was pleading as a Range II offender. Finally, the Petitioner admitted that his blood was found at the crime scene.

Trial counsel testified that she met with the Petitioner many times in the year and a half to two years that the case was pending. Trial counsel discussed the out-of-range plea with the Petitioner, but she admitted that she "may not have used the word[] range." She explained:

I don't specifically remember but it would be my habit to use language like, ["]You would only be able to get a 15- to 25-year sentence if the jury convicted you of second, but we're agreeing to a higher sentence as part of the plea bargain where each side gives a little. The DA is coming off the 51-year life sentence, but you are going to have to go above what you would get if you were actually found guilty of second-degree murder.["] So it is entirely possible that I did not use language about Range I or Range II.

Trial counsel believed the Petitioner understood her explanation of the out-of-range plea.

Trial counsel recalled that the State had three jailhouse informants who would testify that the Petitioner had admitted to committing the crime. However, after the Petitioner entered his guilty plea, co-counsel informed her that the State had told co-counsel that they did not intend to call the jailhouse informants to testify. Trial counsel did not know this information until after the guilty plea, and she said that she would have preferred to have shared that information with the Petitioner before he entered his guilty plea.

Trial counsel stated that the Petitioner was apprehensive about pleading but that he was also apprehensive about going to trial. Trial counsel arranged for the Petitioner to speak with his family. She confirmed that she had recommended that the Petitioner plead guilty, but she did not participate in the Petitioner's discussion with his family.

On cross-examination, she confirmed that the Petitioner's blood was found on the back, right-hand pocket of Mr. Adefope's jeans. Regarding the jailhouse informants' testimony, trial counsel denied that her recommendation that the Petitioner plead guilty would have changed if she had known that the informants would not testify. Trial counsel

denied that she "browbeat [the Petitioner] or anything like that to cause him to plead over his objections or against his desires."

The State introduced the Petition to Enter a Plea of Guilty as an exhibit to the hearing. Immediately above the Petitioner's signature on that document is a handwritten note that clearly reads, "Best Interest Guilty Plea to count 1 reduced to Second Degree murder. 32 years at 100%. [The Petitioner] agrees to sentence outside of range I. Dismiss counts 2 & 3."

In a detailed written order, the post-conviction court denied all of the Petitioner's claims. As to whether trial counsel coerced the Petitioner into pleading guilty, the court found that the Petitioner's and trial counsel's respective testimonies conflicted and credited trial counsel's testimony. As to the information about the jailhouse informants, the post-conviction court noted that co-counsel's statement to trial counsel was hearsay and its truthfulness could not be verified. However, even if the statement could be verified, the post-conviction court found that the evidence against the Petitioner was "nearly insurmountable," and the court was not convinced that the absence of three witnesses would have had a significant impact on the Petitioner's decision to plead guilty.[1] Finally, regarding the Petitioner's understanding that he was pleading as a Range II offender, the post-conviction court found that trial counsel sufficiently explained the Petitioner's punishment and noted that both the plea petition and plea waiver stated that the Petitioner was pleading out-of-range. Consequently, the post-conviction court denied relief, finding that trial counsel was not ineffective and the Petitioner's guilty plea was voluntary and intelligent. This timely appeal followed.

## II. Analysis

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a trial court's findings of fact under a *de novo* standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. Id. (citing Tenn. R. App. P. 13(d); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law are reviewed "under a purely *de novo* standard, with no presumptions of correctness . . . ." Id.

_____

[1] In reaching this conclusion, the post-conviction court referenced evidence that is not part of the record on this appeal but which the court may have been privy to as a result of presiding over preliminary hearings.

When reviewing the trial court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." Id. at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." Id. (citing Henley, 960 S.W.2d at 579).

*Involuntary Guilty Plea*

On appeal, the Petitioner asserts that his guilty plea was involuntary and unknowing because trial counsel failed to explain that he would be pleading to an out-of-range sentence and failed to inform him that the State would not call the three jailhouse informants to testify against him.

When reviewing a guilty plea, this Court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. April 26, 2012). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). On review, this Court, like the trial court, must look to the totality of the circumstances to determine the guilty plea was voluntary and intelligent. Paul Jay Vassallo v. State, No. E2010-00004-CCA-R3-CD, 2011 WL 251208, at *6 (Tenn. Crim. App. 2011); State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against

him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conculsory allegations unsupported by specifics." Id. at 74.

### a. Out-of-Range Sentence

First, the Petitioner claims that, at the time he pleaded guilty, he did not understand that he was pleading out-of-range as a Range II offender. However, trial counsel testified that, even though she may not have used the term "range," she explained to the Petitioner why the plea agreement contained a 32-year sentence as opposed to a potential maximum sentence of 25 years. Additionally, before the Petitioner accepted the plea in court, the State made an offer a proof and said, "The [Petitioner] would also waive his range of punishment on that for a total sentence of 32 years at 100%." Moreover, immediately above the Petitioner's signature, the Petition to Enter a Guilty Plea clearly states, "Best Interest Guilty Plea to count 1 reduced to Second Degree murder. 32 years at 100%. [The Petitioner] agrees to sentence outside of range I. Dismiss counts 2 & 3." During the plea colloquy, the Petitioner affirmed that he freely and voluntarily signed the plea petition and that he had "had plenty of time to go over it" with trial counsel. At no point did the Petitioner ask for clarification about the range classification. Based on this evidence, the Petitioner is not entitled to relief.

### b. Jailhouse Informants

The Petitioner also claims that his plea was involuntary and unknowing because, at the time of his plea, he was not informed that the State did not intend to call the three jailhouse informants to testify against him.

Trial counsel testified that she was not aware of the State's intention not to call the witnesses until her co-counsel relayed that information after the Petitioner's guilty plea. At

the post-conviction hearing, the Petitioner stated that his belief that the informants would testify "play[ed] a role" in his decision. However, the Petitioner offered no other evidence to show that the absence of their testimony would have significantly impacted his decision to plead guilty. Additionally, the post-conviction court noted that the State could still have called the witnesses at trial. Further, given the other evidence against the Petitioner, the post-conviction court questioned whether knowledge that the jailhouse informants did not intend to testify would have significantly affected the Petitioner's decision to plead guilty. The proof presented at the post-conviction hearing established that the Petitioner knew his own blood had been found at the crime scene. Therefore, we conclude that the Petitioner is not entitled to relief.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Id.; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of

the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner's challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See id. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

In this case, the Petitioner argues that he received ineffective assistance of counsel "[b]ased on trial counsel's failure to explain to [the Petitioner] that he would be pleading out-of-range, and trial counsel's failure to inform [the Petitioner] that the State would not be calling the jailhouse informants to testify against him . . . ."

As noted above, the post-conviction court addressed both of the grounds supporting the Petitioner's claim for ineffective assistance of counsel and found that the Petitioner understood that he was pleading to an out-of-range sentence and that he failed to prove that the knowledge of the absence of the jailhouse informants' testimony would have significantly affected his decision to plead guilty. At the post-conviction hearing, the Petitioner explained that he understood he was accepting a 32-year sentence as part of the plea deal but maintained that he did not understand that he was pleading as a Range II offender. He also stated that his belief that the jailhouse informants would testify against him "play[ed] a role" in his decision to plea guilty. However, the Petitioner did not claim that he would have insisted on taking his case to trial had he been sufficiently informed about either of these issues. Further, the Petitioner acknowledged his own blood had been found at the crime scene. Therefore, the Petitioner failed to prove that he was prejudiced by any alleged deficiency and is not entitled to relief.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

-9-